COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: May 4, 2023
Date Submitted: January 30, 2023

Jason C. Powell, Esquire
Thomas J. Reichert, Esquire
The Powell Firm, LLC
1813 N. Franklin St.
Wilmington, DE 19802

Tiffany M. Shrenk, Esquire
MacElree Harvey, LTD.
5721 Kennett Pike
Centerville, DE 19801

Re: *Deborah Harker v. Kwanza Grimes and Ashley Vogel*,
C.A. No. 2021-0751-SEM

Dear Counsel:

On May 31, 2022, I issued a final report finding the petitioner had failed to plead a *prima facia* claim that the principal of the contested power of attorney lacked capacity. Following the lead of Vice Chancellor Glasscock, I found the petitioner should be granted leave to amend. But before the petitioner could do so, the principal died. Her death mooted the petitioner's requests for removal of the agents under, or invalidation of, the power of attorney, which the petitioner has withdrawn. But the petitioner continues to seek an accounting from the agents and return of assets and property owned by the principal or purchased with her funds. The petitioner also seeks rescission of financial transactions for lack of capacity or undue influence and challenges the principal's will and the respondents' request to admit it to probate.

The respondents have moved to dismiss these claims, arguing (1) the petitioner has failed, again, to plead sufficient factual predicate making the principal's alleged lack of capacity reasonably conceivable, (2) the petitioner has failed to plead facts supporting reasonably conceivable inferences that the principal was susceptible to undue influence or that the respondents had the opportunity to and actually asserted undue influence, and (3) the accounting request fails without viable claims that the principal lacked capacity or was unduly influenced. I find these arguments unpersuasive and recommend that the motion to dismiss be denied. The petitioner has fixed the earlier deficiencies and pled cognizable claims for relief. Thus, this matter should move into discovery, where the concerning allegations against the respondents can be explored.

This is my final report.

## I.  BACKGROUND[1]

The motions before me arise from a dispute over the treatment of Betty B. Harker (the "Decedent") and the execution of various documents in her late age. Initially, the Decedent's daughter, Deborah Harker (the "Petitioner") challenged the

---

[1] Unless otherwise noted, the facts recited herein are taken from the second amended petition. Docket Item ("D.I.") 37. I reject the respondents' attempt to insert additional facts. *See* D.I. 63, p. 13.

validity of a power of attorney executed by the Decedent.[2]  On January 3, 2022, the

Decedent filed a motion to intervene in this action and dismiss the underlying

petition.[3]  I issued a final report recommending that both motions be granted on May

31, 2022 (the "First Report").[4]  In the First Report, I found the Petitioner failed to

state a *prima facia* claim that the Decedent lacked capacity to challenge this action;

thus, her request that the action be dismissed should have been granted.[5]  But,

following Vice Chancellor Glasscock's decision in a similar case, I found that

dismissal should be stayed, and the Petitioner should be permitted to amend her

petition.[6]

On June 22, 2022, after the First Report was confirmed as an order of the

Court, I issued a minute order clarifying that the amended petition needed to be filed

by July 5, 2022.[7]  Little did I know, the Decedent had passed eight (8) days before

---

[2] D.I. 1.

[3] D.I. 12.

[4] D.I. 32.

[5] *Id.*

[6] *Id. See Parkhurst v. Nalley*, C.A. No. 11930-VCZ (Del. Ch.).

[7] D.I. 35.  *See also* D.I. 34 (seeking clarification).

my minute order at the age of 94.[8]  Her death did not, however, end this litigation;

rather, it ignited new issues.[9]

The Petitioner filed her second amended petition on June 24, 2022 (the

"Petition").[10]  In the Petition, the Petitioner withdrew her claims to remove the agents

under, and invalidate, the power of attorney.  She replaced them with a caveat against

the Decedent's purported last will and testament. She also bolstered her factual

averments in support of the remaining claims for an accounting, undue influence,

lack of capacity, and unjust enrichment.

### A.    The Bolstered Factual Predicate

In the interest of efficiency, I will not restate the factual predicate as

summarized in the First Report.[11]  Rather, I highlight the amendments as relevant to

the motion pending before me.

The Petition contains additional details regarding the Decedent's capacity,

health, and welfare from 2019 through 2021. After the Decedent's fall in October

2019, she "was dependent upon others for assistance and was no longer able to

---

[8] D.I. 36; D.I. 37, ¶4.

[9] *See, e.g.*, D.I. 46-47; *Grimes v. Harker*, C.A. No. 2022-1143-SEM.

[10] D.I. 37.

[11] D.I. 32. *See also* D.I. 33 (adopting order).

adequately care for herself living alone in her house. She required significant assistance in her daily living."[12] Thus, she moved in with the Petitioner. But after only a couple of days with the Petitioner, the Decedent moved to Cadia Healthcare Broadmeadow in Middletown, Delaware, where she stayed "for a few months for rehabilitation."[13] She returned to the Petitioner's home in December 2019 and stayed there until May 2021.

While the Decedent lived with the Petitioner, the Petitioner assisted her with her finances and medical care, seeing firsthand how the Decedent's "memory and mental abilities began to decline along with her physical limitations."[14] The Decedent would forget conversations and events and failed to take care of her person and property. For example, the Decedent would often forget where the Petitioner was, despite conversations that the Petitioner was running errands.[15] The Decedent also forgot ordering new hearing aids or that her audiologist had given her cleaning tools for those devices.[16]

---

[12] D.I. 37, ¶7.

[13] *Id.* at ¶8.

[14] *Id.* at ¶¶9, 13.

[15] *Id.* at ¶13. The Petitioner provided another example, where the Decedent forgot that she had requested to cancel a doctor's appointment. *Id.*

[16] D.I. 37, ¶13.

During this time, the Petitioner also learned that the Decedent had a line of credit with PNC Bank, which "had already been in existence for several years."[17] But the Decedent did not have a clear memory of the account "and instead possessed delusional beliefs in connection therewith."[18] Specifically, the Decedent and Kwanza Grimes and Ashley Vogel (together the "Respondents")[19] saw the account as proof the Petitioner was stealing from the Decedent.[20] Similar confusion was evident regarding the Investment Account.[21] Although the Petitioner was added as a joint owner over ten (10) years ago, the Decedent "expressed delusional beliefs that the Petitioner is not an owner of the Investment Account and that the Petitioner [was] stealing from her."[22]

The Petitioner avers that the Respondents preyed upon the Decedent's memory issues and delusions to enrich themselves. Such enrichment, per Petitioner, included the aforementioned power of attorney, living in the Decedent's house rent free, and new estate planning documents benefitting the Respondents over other

---

[17] *Id.* at ¶9.

[18] *Id.* at ¶17.

[19] The Petitioner has also named the Decedent's estate as a respondent. D.I. 37.

[20] D.I. 37, ¶17.

[21] As defined in the First Report. D.I. 32, p. 3.

[22] D.I. 37, ¶22.

heirs, including the Petitioner.[23]  Despite controlling and administering every aspect of the Decedent's life from June of 2021 until her death, the "Petitioner does not believe that [the Respondents] took [the Decedent] to see the . . . doctors that were necessary to maintain her health."[24]  This control kept the Decedent from her friends and family during the final year of her life.[25]  Further, "upon information and belief," the Petitioner avers that Mr. Grimes used the Decedent's funds to purchase a BMW and Tesla solely for the Respondents' use.[26]

This was not, per the Petitioner, the first time Mr. Grimes took advantage of the Decedent financially.

> Several years ago, [Mr. Grimes] convinced [the Decedent] to co-sign for a $40,000 college loan so that he could resume his studies at the University of Delaware to finish his degree.  After receiving the funds, he never took any classes and instead spent the money he received for improper purposes and failed to make payments on the loan. Since [the Decedent] had co-signed for the loan, she repaid the loan herself with interest to avoid incurring liability or damage to her credit score.[27]

During her year with the Respondents, the Decedent also undertook some estate planning.  The Petitioner avers that the Decedent had several wills over the

---

[23] *Id.* at ¶18.

[24] *Id.* at ¶¶20-21.

[25] *Id.* at ¶24.

[26] *Id.* at ¶¶22-23.

[27] *Id.* at ¶30.

years, including a reciprocal will with her husband before his death in 2011.[28] In 2018, the Petitioner and the Decedent executed new wills with the assistance of Daniel McCollom, Esquire.[29] But the Petitioner has been unable to find these 2018 wills and the Decedent appears to have executed a new will in 2021.[30]

On or about July 2022, Mr. Grimes filed an opening petition seeking to admit a purported last will and testament of the Decedent dated December 30, 2021 (the "Will") to probate and be appointed as the executor of the Decedent's estate.[31] When the Petition was filed, the Will had not been admitted, nor had Mr. Grimes been appointed.[32] As of July 7, 2022, however, the Will was admitted to probate and Mr. Grimes was granted letters testamentary.[33]

---

[28] *Id.* at ¶31.

[29] *Id.* at ¶31.

[30] *Id.* at ¶32. The Petitioner avers that the Respondents "took, or otherwise disrupted the Petitioner's files and important documents" when they removed the Decedent from the Petitioner's home in June of 2021. *Id.*

[31] D.I. 37, ¶18. *See In re Betty B. Harker*, ROW 181292 ("ROW"), D.I. 3. "Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice." *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C)).

[32] D.I. 37, ¶18.

[33] ROW D.I. 3.

## B. Procedural Posture

After the Petition was served, the Respondents, on July 20, 2022, filed a motion to dismiss the Petition (the "Motion").[34] Two days later, the Respondents submitted a stipulated and proposed scheduling order for briefing the Motion, which I granted.[35] But, on August 8, 2022, counsel for the Respondents provided a status report, informing me that the parties were engaging in mediation.[36] Thus, on August 11, 2022, I issued an order staying this case pending mediation and vacating the briefing schedule on the Motion.[37]

But the calm did not last long. On September 26, 2022, the Petitioner filed a motion for a temporary restraining order, with a motion expedite, arguing that assets of the Decedent's estate were being dissipated and were at risk of being destroyed absent a professional trustee and administrator for the Decedent's estate (the "Emergency Motions").[38] I heard the Emergency Motions on October 4, 2022, and finding the alleged harm "speculative and largely the type of harm that could be remedied by money damages, if necessary[,]" I denied the request for a temporary

---

[34] D.I. 40-41.

[35] D.I. 42-43.

[36] D.I. 44.

[37] D.I. 45.

[38] D.I. 46-47.

restraining order, expedited exceptions, and instructed the parties to submit another status report by October 14, 2022.[39]

No exceptions were filed and on October 14, 2022, the parties requested a continued stay in favor of mediation.[40] I issued a minute order on October 17, 2022, granting that request.[41] But, ultimately, mediation proved unsuccessful, and the Motion is now back in play.[42] The Motion was fully briefed on January 30, 2023, at which time it was submitted for my consideration.[43]

## II. ANALYSIS

The Respondents seek dismissal of the entire Petition under Court of Chancery Rule 12(b)(6), the standard of review under which is settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[44]

---

[39] D.I. 57 at 8:2-17, 10:3-11.

[40] D.I. 58.

[41] D.I. 59.

[42] D.I. 60-62.

[43] D.I. 66.

[44] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

The Petition contains five (5) counts titled: (1) caveat against allowance of the Will; (2) demand for an accounting; (3) undue influence; (4) lack of capacity; and (5) unjust enrichment. I address counts (1) and (4) together, as both require specific factual averments that the Decedent lacked capacity. Then I address count (3) (undue influence), count (5) (unjust enrichment), and, finally, count (2) (seeking an accounting).

> **A.** **The Petitioner has pled sufficient factual predicate supporting lack of capacity.**

The Petitioner avers that the Decedent lacked capacity after May 2021 to execute any estate documents (including the Will and power of attorney) or documents necessary to retitle assets or change beneficiary designations or deeds. The Respondents seek dismissal arguing the Petitioner has failed to plead non-conclusory facts to support the alleged lack of capacity. I disagree.

The Petitioner's claims invoke both testamentary and contractual capacity. To possess testamentary capacity, a testator must "be capable of exercising thought, reflection and judgment, and must know what he or she is doing and how he or she is disposing of his or her property. The person must also possess sufficient memory and understanding to comprehend the nature and character of the act."[45] This is not

---

[45] *In re Est. of W.*, 522 A.2d 1256, 1263 (Del. 1987).

a particularly high bar, as "only a modest level of competence is required for an individual to possess the testamentary capacity to execute a will."[46]

Similarly, someone lacks contractual capacity if they are "incapable of understanding the nature and effect of the transaction or [their] mental faculties were so impaired as to render [them] unable to properly, intelligently and fairly protect and preserve [their] property rights."[47] A lack of contractual capacity must be shown by more than a "gradual weakening of mental capacity[.]"[48]

Taken together, to state a claim for lack of testamentary or contractual capacity, the Petitioner needed to plead specific, non-conclusory facts as to the Decedent's diminished capacity.[49] As I highlighted in the First Report, Vice Chancellor Glasscock's decision in *Parkhurst v. Nalley* demonstrates what is enough;[50] then-Master LeGrow's decision in *In re Hurley*, demonstrates the opposite.[51]

---

[46] *Id.*

[47] *McAllister v. Schettler*, 521 A.2d 617, 621 (Del. Ch. 1986) (internal citations and quotations omitted).

[48] *Id.* "A gradual weakening of mental capacity, even when accompanying extreme old age and serious illness, will not alone disable someone from making a contract." *Id.*

[49] *See In re Hurley*, 2014 WL 1088913, at *4 (Del. Ch. Mar. 20, 2014).

[50] *Parkhurst v. Nalley*, C.A. No. 11930-VCZ, D.I. 107 (Del. Ch. May 2, 2018) (Glasscock, V.C.) (TRANSCRIPT).

[51] *In re Hurley*, 2014 WL 1088913, at *4.

In *Parkhurst*, the petitioner alleged facts showing the principal believed (1) she was being followed, (2) her deceased husband was still alive, and (3) people were lurking in her attic.[52] The petitioner further averred that the principal was unable to recollect legal actions she had taken.[53] Based on these averments, Vice Chancellor Glasscock found the petitioner pled a *prima facia*, or reasonably conceivable, claim for lack of capacity and ordered further evaluation of the principal's capacity.[54]

In *Hurley*, such detail was lacking. Then-Master LeGrow explained the allegations before her were "minimal under the best of circumstances."[55] She expanded:

> It is debatable that a court could infer a lack of testamentary capacity from the mere fact that a testator was of advanced age, had surgery to remove a tumor three years before the estate planning documents were executed, and experienced unspecified "serious" medical problems. The Court cannot infer a lack of capacity solely based on a testator's advanced age, and advanced age coupled with surgery on a tumor and other non-specific medical problems does not, in my opinion, support a reasonable inference that a testator did not comprehend the nature and character of her acts when she executed testamentary documents.

---

[52] *Parkhurst v. Nalley*, C.A. No. 11930-VCZ, D.I. 107 at 44:9-14 (Del. Ch. May 2, 2018) (Glasscock, V.C.) (TRANSCRIPT).

[53] *Id.*

[54] *Id.*

[55] *Hurley*, 2014 WL 1088913, at *4.

On this record, then-Master LeGrow held an "inference of a lack of capacity would be unreasonable under the facts [p]etitioners concede in the [a]mended [p]etition."[56]

The same cannot be said here. The Petition contains specific averments of incapacity; averments that were missing before and rise above those found insufficient in *Hurley*. Like the plaintiff in *Parkhurst*, the Petitioner has pled facts demonstrating a pattern of the Decedent failing to recognize and remember personally important information.[57] The Petitioner has bolstered the prior averments of forgetfulness or delusions with specific instances that make it reasonably conceivable that the Decedent lacked capacity to contract or make a will. I find these averments sufficient at the pleading stage.[58]

---

[56] *Id.*

[57] *Cf. In re Gordy*, 658 A.2d 613, 617 (Del. Ch. 1994) ("the mental incapacity to which [the adult guardianship statute] refers includes (1) a pattern demonstrating an inability to recognize as relevant to decisions of significance, facts or considerations that one would expect reasonable and competent persons to recognize as relevant to such a decision; (2) a pattern demonstrating an inability to reason with respect to decisions that are relatively simple but personally important, in a way that is internally consistent; or (3) the presence of a mental disease or condition that interferes with the operation of the prospective ward's perceptions or reasoning to such an extent as to raise a substantial likelihood that decisions relating to matters of importance to her have been affected by that mental disease or condition").

[58] The Respondents argue that even if they otherwise survive, counts (1) and (4) should be dismissed as to Ms. Vogel. But, as I read them, counts (1) and (4) are not pled against Ms. Vogel. Count (1), seeking a caveat against the Will, is against the Decedent's estate. Count (4) seeks to invalidate other documents for lack of capacity; it is not against Ms. Vogel, but she may have an interest in the validity of those documents. Because these claims, as pled, are not against Ms. Vogel, I see no justification to dismiss them as to her.

> **B.** **The Petitioner has pled a reasonably conceivable claim for undue influence.**

The Respondents also seek dismissal of the Petitioner's undue-influence claim. An undue-influence claim must be supported by well-pleaded facts substantiating five elements: "(1) the susceptibility of the donor to undue influence, (2) the opportunity to exert undue influence, (3) disposition or motive to do so for an improper purpose, (4) actual exertion of undue influence, and (5) a result demonstrating its effect."[59]  The Respondents argue the Petitioner fails on prongs (1), (2), and (4), which I address in turn.  In doing so, I find the Petitioner has pled a reasonably conceivable claim of undue influence.

First, for the reasons provided above, it is reasonably conceivable that the Decedent lacked testamentary and contractual capacity.  For the same reasons, susceptibility to undue influence is reasonably conceivable.[60]

---

[59] *Hurley*, 2014 WL 1088913, at *5.

[60] *See Sweeney v. Sweeney*, 2021 WL 5858688, at *4 (Del. Ch. Nov. 30, 2021), *adopted*, (Del. Ch. 2021) (finding the petitioner failed to plead a reasonably conceivable claim for lack of capacity but that the same averments supported susceptibility). The Respondents find fault in the Petitioner's failure to identify a medical diagnosis of cognitive impairment. D.I. 63, p.18.  Although such averments are persuasive, the lack of such is not dispositive at the pleading stage. *Cf. In re Gordy*, 658 A.2d at 617.

  The Respondents also point me to *In re McElhinney* for the proposition that testators are presumed to execute their estate planning documents of their own free will. *In re McElhinney*, 2007 WL 2896013, at *4 (Del. Ch. Oct. 1, 2007).  Although the proposition is apt, *McElhinney* was a post-trial decision, implicating a preponderance of the evidence burden applied to a full evidentiary record. *Id.* We are at the pleading stage, where the test

Second, it is reasonably conceivable that the Respondents had the opportunity to assert undue influence. The Petitioner avers that the Decedent was dependent on others for her care, activities of daily living, and travel. The Petitioner further avers that the Decedent lived with the Respondents, who isolated her from others during the relevant period. These averments make it reasonably conceivable that the Respondents had the opportunity to assert undue influence.

Third, the Petitioner has pled non-conclusory facts supporting actual assertion. The Petition paints a picture of the Respondents gaining full control over the Decedent's assets during a period of susceptibility, withdrawing substantial funds, and using those funds and other assets in ways that solely benefitted themselves.[61] It is reasonably conceivable that the Respondents gained such control through the actual assertion of undue influence.

---

is reasonable conceivability. The Petitioner has pled facts that make it reasonably conceivable that the Decedent lacked capacity; whether those claims will prevail remains to be seen.

[61] This distinguishes the Petition from the averments found lacking in *Sweeney v. Sweeney*, 2021 WL 5858688, at *4. The Respondents argue that the averments after the qualifiers "upon information and belief" should be disregarded under *O'Gara v. Coleman*, 2020 WL 752070, at *6 (Del. Ch. Feb. 14, 2020). But that leaves the concerning allegations that the Respondents were motivated by unemployment and lack of financial assets and withdrew over $400,000.00, causing the bank to freeze the Decedent's account. D.I. 37, ¶23. I find these averments sufficient to state a claim for undue influence.

     **C.**    **The Petitioner has pled a reasonably conceivable claim for unjust enrichment.**

To state a claim for unjust enrichment, the Petitioner must plead factual averments supporting four elements "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, and (4) the absence of justification."[62] The Respondents argue that the Petitioner seeks to improperly upend the Decedent's estate planning without demonstrating an impoverishment or lack of justification. I address these arguments in turn and find the claim reasonably conceivable.

First, the Respondents argue that the Petitioner has failed to plead an impoverishment because the Petitioner was not entitled to the Decedent's assets and the Decedent is free to dispose of her assets as she chooses; a choice Delaware law respects and upholds. This argument, however, ignores the portion of the Petitioner's claim that relates to the Respondent's withdrawal from the Investment Account; there, the Petitioner pled a direct impoverishment, accepting the Petitioner's averments that the Investment Account was jointly owned by the

---

[62] *Riverside Risk Advisors LLC v. Chao*, 2022 WL 14672745, at *28 (Del. Ch. Oct. 26, 2022), *as corrected* (Oct. 28, 2022), *judgment entered sub nom. Riverside Risk Advisors LLC v. Ching Chao* (Del. Ch. 2023) (citing *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 341–51 (Del. Ch. 2022) (clarifying that, absent a dispute over jurisdiction, "the absence of a remedy at law" is not a necessary element of a claim of unjust enrichment)).

Petitioner and the Decedent. The unjust-enrichment claim does, however, go further and implicates assets that would have passed through the Decedent's estate. For such assets, the Respondents' argument is more persuasive. But I find the Petitioner's claim should nonetheless survive the pleading stage.

Vice Chancellor Laster's decision in *Garfield ex rel. ODP Corp. v. Allen* is instructive.[63] Therein, the Vice Chancellor explained that unjust enrichment is a flexible test, despite the rigid prongs often quoted.[64] Applying the appropriate flexibility, "a plaintiff need not plead a personal 'impoverishment' in the sense of a pecuniary loss. Rather, a plaintiff must plead that the defendant received a *benefit*, that the defendant's receipt of the benefit was unjustified, and that there is some connection between the benefit unjustly received and an invasion of the plaintiff's legally protected rights. The claim is about unjust *enrichment*, not the plaintiff's impoverishment."[65]

Here, applying the flexible standard highlighted in *Garfield*, I find the Petitioner's claim should survive the pleading stage. The Petitioner has pled sufficient factual predicate that the Decedent lacked capacity or was otherwise

---

[63] 277 A.3d 296 (Del. Ch. 2022).

[64] *Id.* at 344.

[65] *Id.* at 345 (citations omitted, emphasis in original).

susceptible to undue influence at the time she engaged in estate planning and financial transactions. That planning and those transactions benefitted the Respondents to the detriment of other heirs of the estate, including the Petitioner.

Second, it is reasonable to infer from the non-conclusory facts in support of lack of contractual or testamentary capacity that the enrichment and impoverishment was without justification.[66]

### D. The Petitioner's accounting request should survive.

Finally, the Respondents argue that the Petitioner's request for an accounting depends upon, and fails with, her other claims. This argument is moot with my finding that the Petitioner's claims were adequately pled and are reasonably conceivable.[67]

## III. CONCLUSION

For the above reasons, I recommend that the Motion be denied. The Petitioner has pled reasonably conceivable claims for relief, and it is time for this matter to

---

[66] *Cf. Sweeney v. Sweeney*, 2021 WL 5858688, at *5 ("Because Petitioner failed to plead non-conclusory facts in support of a lack of testamentary capacity or undue influence, it would be unreasonable to infer that Decedent's testamentary plan as reflected in the 2019 Will and the 2019 Trust was not justified.").

[67] *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *25 (Del. Ch. May 5, 2010) ("So long as the underlying cause of action is well plead, requested relief styled as a claim will not be stricken from the complaint").

move into discovery so those claims can be explored and addressed on a more developed record. This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery